# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **99 C 6339** | **DATE** | July 12, 2002 |
| **CASE TITLE** | Iris Cleveland    v    Prairie State College | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐   Filed motion of [ use listing in "Motion" box above.]

(2)  ☐   Brief in support of motion due _____.

(3)  ☐   Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐   Ruling/Hearing on _____ set for _____ at _____.

(5)  ☒   Status hearing set for 7/25/02, at 9:00 a.m.

(6)  ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐   Trial[set for/re-set for] on _____ at _____.

(8)  ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■   [Other docket entry]
## Memorandum opinion and order entered.
## Accordingly, defendant's motion for summary judgment is denied.

(11) ☐   [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | ⌐JUL 15 2002 | |
| | Notified counsel by telephone. | | date docketed | 42 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | | mailing deputy initials |

U.S. DISTRICT COURT
CLERK
02 JUL 12 PM 3: 59
FILED
Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRIS CLEVELAND,                    )
                                   )
            Plaintiff,             )
                                   )        No.    99 C 6339
      v.                           )
                                   )        Judge Robert W. Gettleman
PRAIRIE STATE COLLEGE,             )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Iris Cleveland sued defendant Prairie State College for allegedly violating the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA") by, (1) failing to make reasonable accommodations for plaintiff's disability, and (2) deciding not to re-hire plaintiff as an adjunct instructor for the next semester. Defendant filed a motion for summary judgment on both claims. In response to plaintiff's Local Rule 56.1(b)(3) response to defendant's statement of material facts and statement of additional facts, defendant filed an LR 56.1(a) response to plaintiff's statement of additional facts and an additional statement of additional facts. Based on these filings and attachments thereto, the following motions are now before the court: 1) defendant's motion for summary judgment; 2) plaintiff's motion to strike defendant's statement of additional facts; and, 3) plaintiff's motion to strike portions of the affidavit of Susan Solberg and the pleadings which cite thereto. For the reasons set forth below, the court grants plaintiff's motion to strike defendant's statement of additional facts, denies plaintiff's motion to strike portions of the affidavit of Susan Solberg and the pleadings which cite thereto, and denies defendant's motion for summary judgment.

# MOTION TO STRIKE

In addition to filing its reply brief and response to plaintiff's statement of additional facts, defendant filed a statement of additional facts, which plaintiff has moved to strike because LR 56.1 does not authorize a movant to file a statement of additional facts with its reply brief. In response, defendant argues that such a filing is authorized under the plain language of LR 56.1(a) read in conjunction with subsection (b)(3). Neither party cites any supporting case law.

Local Rule 56.1 provides (*emphasis added*):

(a) Moving Party. With each motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, the moving party shall serve and file:
(1) any affidavits and other materials referred to in Fed.R.Civ.P. 56(e);
(2) a supporting memorandum of law; and
(3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law, and that also includes:
(A) a description of the parties, and
(B) all facts supporting venue and jurisdiction in this Court.
The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.
*If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(B) will be deemed admitted unless controverted by the statement of the moving party.*
(b) Opposing Party. Each party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall serve and file;
(1) any opposing affidavits and other materials referred to in Fed.R.Civ.P. 56(e);
(2) a supporting memorandum of law; and
(3) a concise response to the movant's statement that shall contain:
(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
(B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to

the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

The courts of this district have not adopted defendant's interpretation of the local rule as allowing the movant to respond to the non-movant's statement of additional facts by submitting both a reply as prescribed by LR 56.1(a)(3)(B) and a statement of additional facts as prescribed by LR 56.1(b)(3)(B). Instead, the courts have consistently interpreted the last sentence in LR 56.1(a) as allowing the movant to file only a reply to the non-movant's additional statement of facts in accordance with the procedures set forth in subsection LR 56.1(b)(3)(A), either admitting or denying each numbered paragraph and citing to the portions of the record that support such answers. See, McKay v. Town and Country Cadillac, Inc., 2002 WL 226807 at *1 n.1 (N.D.Ill. Feb. 13, 2002).

In McKay, noting that the summary judgment movant erroneously titled its response to the nonmovant's statement of additional facts as "Response to Plaintiff's Statement of Additional Facts Pursuant to Local Rule 56.1(b)(3)(B)," the court explained (at *1 n.1.):

> In fact, the defendant's response to the plaintiff's statement of additional facts is authorized by the first sentence of the final paragraph of Local rule 56.1(a) .... [This paragraph] means that pursuant to Local Rule 56.1(a), the defendant may submit a reply to the plaintiff's 56.1(b)(3)(B) statement using the form prescribed in 56.1(b)(3)(A).

In further support of this interpretation of the movant's rights and responsibilities under L. R. 56.1, courts have granted motions to strike a movants filings of additional facts in conjunction with the movant's reply brief, holding that such filings are not provided for under the rules and, therefore, must be disregarded unless the movant seeks leave to file additional facts. See, R.G.H. v. Abbott Laboratories, 1995 WL 68830 at *12 n.1 (N.D.Ill. Feb. 16, 1995); Currier

Builders, Inc. v. Town of York, 2002 WL 1146773 at *5 (D.Me. May 30, 2002). The court agrees with the interpretation of L. R. 56.1 discussed above; any other interpretation would result in endless duels of supposedly "uncontested" facts that would eviscerate the efficiencies sought to be achieved by the summary judgment process. Accordingly, plaintiff's motion to strike defendant's statement of additional facts is granted.

Addressing plaintiff's second motion to strike, defendant attached to its response to plaintiff's LR 56.1 statement of additional facts a three-page, fourteen paragraph affidavit of Dr. Susan Solberg ("Solberg"). Plaintiff moves to strike paragraphs 4(3), 4(4), 6, 7, 8, 12 and 14 of Solberg's affidavit, arguing that they directly conflict with her prior deposition testimony. Additionally, plaintiff moves the court to strike paragraphs 36 and 39 of defendant's response to plaintiff's LR 56.1 statement of additional facts and to strike paragraphs 3,4,5,6,10,11,12,14 and 15 of defendant's statement of additional facts that cite to the offending paragraphs within Solberg's affidavit. As set forth in plaintiff's brief, where deposition testimony and affidavit statements are in conflict, the affidavit is to be disregarded unless there is a plausible explanation for the incongruity. Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998). Affidavits that conflict with earlier deposition testimony are permissible in a limited number of circumstances, however, including where such affidavit testimony seeks "to clarify ambiguous or confusing deposition testimony." Deimer v. Cincinnati Sub-Zero Products, Inc., 990 F.2d 342, 346 n.3 (7th Cir. 1993).

This court has thoroughly examined the deposition testimony cited by both parties. While the court notes that often in the deposition, certain questions and answers make the dates and timing of defendant's receipt of complaints against plaintiff hazy, the court finds that there

4

are no direct inconsistencies between Solberg's affidavit and her deposition testimony. Accordingly, the motion is denied.

## MEMORANDA REQUIREMENTS UNDER LR 56.1

The court notes that neither the moving defendant nor the plaintiff has bothered to include a statement of facts section in her or its legal memoranda, electing instead to leave it to the court to sift through the parties' LR 56.1 statements and responses to determine the background and proper sequence of events. The inadequacy of this approach is most evident in defendant's opening brief, which improperly assumes the court's familiarity with the facts it claims are undisputed and entitle it to judgment as a matter of law.

As the court has previously admonished, "The purpose of LR 56.1 statements are not intended to be substitutes for a statement of facts section of a memorandum of law. Rather, their purpose is to assist the court in identifying those material, uncontested facts in the record that entitle the movant to judgment." Duchossois Industries, Inc. v. Crawford & Co., 2001 WL 59031, at *1 (N.D. Ill. Jan. 19, 2001). Thus, statements of material facts and responses thereto are not, by their very nature, argumentative or instruments of persuasion. That is the function of the parties' briefs, the length of which is limited by LR 7.1 to 15 pages without leave of court.

These fundamental principles, that presumably are known by all lawyers practicing before this court including counsel herein, prohibit the type of irresponsible briefing that was submitted in connection with the instant motion. Omitting complete factual recitations in the parties' briefs constitutes an impermissible and transparent attempt to avoid the page limitations prescribed by LR 7.1. Worse yet, this practice (thankfully rare in this court's experience) causes an undue burden on the court and its staff to sift through mounds of paper to ferret out the material facts at

issue. This the court will not do. "Judges are not like pigs, hunting for truffles buried in briefs."
U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

Defendant's failure to fulfill its obligations as described above would, alone, justify denying its motion for summary judgment. The court has nevertheless reviewed the record, which reveals numerous contested issues of material fact that preclude summary judgment on the merits as well.

## BACKGROUND

Plaintiff suffered from a stroke in 1992 that caused right-side weakness, limiting the range of motion in her limbs. Based on this weakening, plaintiff has only limited use of her right hand and cannot use that hand to hold a pen or pencil. The weakness in her right side also requires plaintiff to use a wheelchair or quad cane to get around.

Defendant is a public community college located in Illinois. During the relevant time period, Solberg was defendant's Dean of Arts and Sciences, whose duties included making certain the standards of academic quality are maintained across all the courses in the Arts and Sciences division, working with new faculty and evaluating them, scheduling and budgets. Dr. Juanita Butler ("Butler") was defendant's English Department Chair. Butler's duties as English chair included supervising adjunct instructors, hiring adjuncts in collaboration with Solberg, maintaining academic quality in all classes taught by adjuncts, observing new adjunct instructors in class and evaluating them, and mentoring and helping adjuncts at their request.

Approximately four days prior to the beginning of the Fall 1998 semester, plaintiff was interviewed by Butler and was employed as an adjunct instructor for one semester to teach two courses. Plaintiff was given her choice of which courses she wanted to teach, and chose two

6

remedial English classes, English 98 and English 99. During the interview, there was no discussion of plaintiff's disability, or any request for or discussion of any accommodation that plaintiff required in order to fulfill her capacity as instructor for either of these classes. As an adjunct instructor, Butler was plaintiff's direct supervisor and Solberg was Butler's direct supervisor. At some point either at the end of her interview, or some date shortly thereafter, plaintiff was told to complete the requisite hiring paperwork. This included defendant's employment application. Plaintiff refused to sign her employment application.

Plaintiff's first request for an accommodation was made indirectly to William Wesender ("Wesender"), defendant's special needs coordinator, through David Sheridan ("Sheridan"). Sheridan, a mutual friend of plaintiff and Wesender, called Wesender and requested that someone transport plaintiff's mail from defendant's mail room to an area on the first floor of the college where it would be easier for plaintiff to pick it up. Sheridan is not defendant's employee. It is undisputed that this accommodation was at least coordinated and begun.

The next contact made by either party regarding accommodations was two weeks into the semester, when defendant's Director of Human Resources, Randy Madderom ("Madderom"), contacted plaintiff to set up a meeting to discuss any accommodations plaintiff needed to perform her job. Plaintiff and Madderom met for about an hour, during which time plaintiff requested an assistant, a cellular phone for her to communicate in case of an emergency, rearranging the classroom furniture, and an escort to and from her classroom. The two also discussed the possibility of plaintiff getting a classroom on the first floor. At the end of this meeting, Madderom told plaintiff that he would get back to her regarding her requests.

7

Following this meeting, the parties do not dispute that the following accommodations were arranged for plaintiff (the duration and "sporadic" nature of their fulfillment, however, are in dispute): 1) plaintiff was provided with a cellular phone to be able to contact security in the event of an emergency; and, 2) a security guard was authorized to escort plaintiff to and from her class. A memorandum was issued by defendant's head of the Campus and Public Safety Department ("CPS"), Joseph Maun, directing that CPS would provide plaintiff with assistance from CPS' office to plaintiff's classroom, listing the two times at which her classes met. This memorandum further states that CPS was issuing a cell phone for plaintiff's use during those class periods. With regard to the rearrangement of furniture in the classrooms, the only undisputed fact is that at least on one occasion, Madderom walked by plaintiff's classroom, noticed the classroom furniture had been rearranged, and therefore assumed that the accommodation was being met.

Plaintiff also requested an assistant to aide in various duties, including recording grades, distributing and collecting assignments in class, and other clerical work. Defendant's Vice President of Academic Affairs for the College, Linda Uzureau ("Uzureau"), was consulted about this accommodation, specifically with regard to assistance with grading papers and posting grades. An assistant was not authorized or provided. Further, plaintiff's class was not moved to a first floor classroom; however, it is undisputed that there was elevator access to all floors of the school. Plaintiff was not rehired for the next semester.

## SUMMARY JUDGMENT STANDARDS

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 668 (7th Cir. 2000), *quoting*, Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (U.S. 1986). In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the non-moving party and make all reasonable inferences in his or her favor. *See*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (U.S. 1986).

To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his [or her] pleadings, but must "set forth specific facts showing a genuine issue for trial exist[s]," Bekker, 229 F.3d at 669, and "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." Serfecz v. Jewel Food Stores, 67 F.3d 591, 596 (7th Cir. 1995) (*citations omitted*). The non-movant "must supply evidence sufficient to allow a jury to render a verdict in his favor." Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).

## REASONABLE ACCOMMODATIONS CLAIM

In asserting a failure to accommodate claim under the ADA, plaintiff has the burden of demonstrating that: 1) she is a person with a disability as defined by the ADA; 2) defendant knew about plaintiff's disability; and 3) plaintiff is otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation. Winfrey v. City of Chicago, 259 F.3d 610, 614 (7th Cir. 2001). Once plaintiff has established this preliminary standard, she must then show that defendant failed to provide any reasonable accommodation. Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001). Failure to accommodate claims "stem from language in the ADA defining discrimination in part as 'not making reasonable

9

accommodations to the known physical or mental limitations of an otherwise qualified individual.'" *Id. quoting*, 42 U.S.C. §12112(b)(5)(A).

The parties do not dispute the fact that plaintiff is a person with a disability under the ADA or that defendant had knowledge of plaintiff's disability. Defendant moves for summary judgment on plaintiff's failure to accommodate claim on two grounds: 1) plaintiff is not a "qualified individual" because she cannot and did not meet the essential functions of the teaching position for which she was hired and sought rehire either with or without reasonable accommodations; and, 2) defendant did not fail to provide plaintiff with reasonable accommodation under the ADA. Defendant's "qualified individual" defense is asserted against both plaintiff's failure to accommodate and failure to rehire claims.

## QUALIFIED INDIVIDUAL

Under the ADA, an employer is prohibited from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). In order to establish that she is a "qualified individual," plaintiff must establish that: 1) she satisfied the prerequisites for the position, i.e., proper training, skills, education and experience; and 2) she could perform the essential functions of the position with or without reasonable accommodation. Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1284 (7th Cir. 1996). "Whether the plaintiff meets the 'qualified individual with a disability' definition is determined as of the time of the employment decision." Weiler v. Household Finance Corp., 101 F.3d 519, 524 (7th Cir.1996).

Defendant does not dispute that "on paper" plaintiff met the prerequisites for the position to which she was hired. Defendant asserts, however, that plaintiff was unable to perform the essential job functions. "A job function may be considered essential for any of several reasons, including but not limited to the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. §1630.2 (n)(2). "Evidence of whether a particular function is essential includes, but is not limited to: (i) The employer's judgment as to which functions are essential ...." 29 C.F.R. § 1630.2 (n)(3)(i).

Defendant states that the duties of an English 98 instructor include teaching grammar, sentence structure and paragraphs in order to aide students in becoming fully literate. Students in the English 99 class generally have tenth grade English level scores. The duties of an English level 99 instructor include focus on sentence structure, reviewing grammar, parts of speech, and teaching students to write simple, well-structured, coherent papers. According to Solberg's affidavit, with regard to both courses, "[o]ne of the most important functions of a person in this position is giving writing assignments and grading and returning them quickly to ensure that the students receive input from which to learn and improve. .... It is also extremely important for an instructor of a remedial English course to be very specific in his or her assignments and to provide proper guidance and instruction to his or her students."

Defendant asserts that during the course of the Fall 1998 semester, it became apparent that plaintiff lacked the appropriate skills and ability to teach the two college English classes that plaintiff chose to instruct, either with or without an accommodation. In support of its argument, defendant relies on the following evidence: 1) defendant received student complaints during the semester regarding plaintiff's teaching, some of which culminated in the students seeking to drop plaintiff's class; 2) plaintiff failed to follow her course syllabus; 3) plaintiff failed to give proper direction to her students and received unacceptable student evaluations; 4) in an hour long evaluation of plaintiff's class, Butler did not observe any writing instruction and noted that the class was not following the syllabus assignment; 5) one of defendant's librarians voiced concerns, stating that plaintiff sent her students to the library with a comprehensive book list allegedly inappropriate for the students' reading level and without any direction on their assignment; 6) plaintiff made inappropriate demands on students, including asking for rides to and from the school and to run errands such as getting plaintiff a soda, during the class period; and, 7) a fellow adjunct instructor who shared the same classroom with plaintiff complained that plaintiff would interrupt and disrupt her class while it was in session.

Defendant argues that even taking all of plaintiff's allegations regarding accommodations as true, "[n]o amount of reasonable accommodations could have cured these problems with [plaintiff's] teaching performance." Even if plaintiff had been given assistance in arranging the furniture in her classroom, provided with a portable telephone, provided a student aide to assist in sorting papers and other tasks, and given a first floor classroom, defendant asserts that these accommodations "do not in any way relate to her ability to appropriately conduct and teach her class." Defendant argues that none of the accommodations sought by plaintiff dealt in any way

12

with "interacting with students and failing to correlate her assignments with the teaching curriculum." Defendant further asserts that even though defendant did not accommodate plaintiff by providing an assistant, plaintiff did in fact hire her own assistant and was still not able to meet the essential functions of her position with such help.

Plaintiff counters by arguing that she was a "qualified individual" and that defendant's evidence is suspect on two accounts: 1) as to some of the items raised by defendant, there are issues of fact regarding when the complaints against plaintiff were made and whether they were received prior to the time the decision not to rehire her was made; 2) when speaking to certain of defendant's representatives with regard to the first student complaint received and later when discussing the evaluation and the allegedly inappropriate book lists, defendant either directly or implicitly made it seem that these incidents were not matters of concern; and, 3) out of the five written student evaluations from a class of 27, two were favorable. Plaintiff further argues that although she hired an assistant, he was unable to assist her in connection with her morning class, and his assistance was limited as to her evening class.

The record establishes contested facts as to whether plaintiff was a "qualified individual" at the time she sought to be re-hired. It is also unclear whether defendant was aware of the evidence allegedly indicating that she was not a "qualified individual" prior to the date on which it decided not to re-hire her or during the period in which plaintiff claims defendant failed to accommodate her disability. Thus, defendant's motion for summary judgment on this ground is denied.

## REASONABLE ACCOMMODATION

The ADA defines discrimination as including an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer] ..." 42 U.S.C. § 12112(b)(5)(A). With regard to accommodations, "[u]nder the ADA, an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee." Dvorak v. Mostardi Platt Associates, Inc., 289 F.3d 479, 484-485 (7th Cir. 2002).

As set forth in plaintiff's brief, "[d]uring her employment with defendant, Plaintiff requested the following accommodations: transportation of her College mail from the mailroom to a more accessible location; a communication device for use during emergencies; a student aide to assist with transferring grades, sorting, filing and distributing papers and other clerical work; an escort to provide assistance in getting to and from her morning and evening classes; classrooms on the first floor; and assistance in moving the furniture in her classrooms to allow her to enter, exit and move about the room." Plaintiff concedes that defendant transferred the mail for a period of three weeks, but asserts that such transfer ended thereafter. She further concedes that she was provided with a communication devise and a security escort, but states that these were provided "sporadically."

With regard to the request for an assistant, the matter was brought to the attention of Linda Uzureau, defendant's Vice President of Academic Affairs, who made the decision not to accommodate plaintiff's need for assistance allegedly based on defendant's policy prohibiting

anyone other than the instructor from recording grades. Uzureau testified in her deposition that following an incident where an instructor had given the job of turning in grades to his secretary and it was found that the secretary was changing grades, Uzureau instituted a policy prohibiting any involvement with the grading and posting process of student grades.

With respect to this policy and plaintiff's request, Uzureau testified:

> So when anything came up, when there was a question about, well, you know, maybe that she wanted a student or wanted somebody else to work with the grades, I remember saying because one of the things I had announced to the faculty is your job is grading, evaluation of students. That is your job and your job only. Nobody else should be involved with anything related to your grading.
> And we changed the procedures, and faculty members had to personally deliver the grades to the registrar and hand it to the registrar and there would be no one in between. So I remember saying that that type of accommodation couldn't take place.

While under the ADA, "[a]n employer is not obligated to change the essential functions of a job to accommodate an employee," Emerson v. Northern States Power Co., 256 F.3d 506, 514 (7th Cir. 2001), reasonable accommodation may include "appropriate adjustment or modifications" of an employer's policies. *See*, 29 CFR § 1630.2(o)(2)(ii). The Seventh Circuit recognizes that the accommodation process is "interactive," under which both parties must put forth "serious efforts." Dvorak, 289 F.3d at 485. In Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996), discussing the nature of each party's duty to the other to engage in good faith negotiations the court held that "the regulations envision an interactive process that requires participation by both parties." *See also*, Dvorak, 289 F.3d at 485 ("the threshold of cooperation [in negotiating possible accommodations] ... requires serious efforts from both parties").

In Beck, both parties engaged in the interactive process but at some point, the process broke down. Finding that "[n]either the ADA nor the regulations assign responsibility for when the interactive process fails," the court held (75 F.3d at 1135-1136):

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility. For example, the cause of the breakdown might be missing information. The regulations envision such a cause:
>
> > [I]n some instances neither the individual requesting the accommodation nor the employer can readily identify the appropriate accommodation. For example, the individual needing the accommodation may not know enough about the equipment used by the employer or the exact nature of the work site to suggest an appropriate accommodation. Likewise, the employer may not know enough about the individual's disability or the limitations that disability would impose on the performance of the job to suggest an appropriate accommodation. 29 C.F.R. pt. 1630, app.

The function of the ADA is to force an employer to have an ongoing dialogue with a disabled employee that enables the employer to both "accommodate" the employer's policies and job requirements and yet meet the needs of a "qualified individual." In the instant case, the court finds there is a genuine issue of fact as to whether defendant could have enforced its valid policy to prevent grade tampering while still providing plaintiff with an accommodation for her physical disability. For example, defendant could have provided plaintiff with an assistant to help in transferring grades to a gradebook, while requiring plaintiff to oversee the transfer of these grades or requiring her to check the gradebook after such transfer was made to insure the accuracy of the grading. As noted by plaintiff, however, defendant denied her request without ever discussing her needs or defendant's policy concerns, thus denying plaintiff the chance to

discuss these types of ideas. The court finds that there is a genuine issue of fact as to whether this lack of communication is sufficient to meet the requisite "ongoing dialogue" that should occur between an employer and a "qualified individual" employee under the ADA.[1]

The court further finds there is a genuine issue of fact regarding defendant's failure to make a reasonable accommodation of rearranging the classroom furniture in order to allow plaintiff to access and move about the classroom. There is conflicting testimony as to what attempts, if any, were made by Madderom to meet this request.[2] While defendant argues that plaintiff failed to communicate with defendant regarding any failure to meet her needs, there is evidence that plaintiff complained to Madderom and Maun regarding the fact that certain of the accommodations were not being consistently met and that this evidence was brought to Solberg's attention. Both Madderom and Maun responded to complaints regarding the escort by looking into the matter and Maun issued two follow-up memoranda to plaintiff and Solberg regarding his staff's responsibilities to provide escort and cell phone assistance. These same memoranda also establish that plaintiff continued to ask defendant's assistance in rearranging the classroom furniture and that defendant failed to meet these requests.

Based on these material issues of contested fact, the court denies defendant's motion for summary judgment on plaintiff's failure to accommodate claim.

---

[1] The court notes that there is no evidence, and plaintiff was not informed, that defendant's decision not to supply plaintiff with an assistant was based on a financial hardship.

[2] In his deposition, Madderom stated that he spoke to his supervisor James Troutman about plaintiff's request, but could not recall if he also contacted Ray Marthaler, then director of facilities who was responsible for classroom arrangements.

## FAILURE TO REHIRE CLAIM

In order to establish disability discrimination and defeat defendant's motion for summary judgment, plaintiff must establish the following three elements: (1) she is a person with a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodations; and, (3) that she suffered from an adverse employment decision because of her disability. Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 670 (7th Cir. 2000). An employee can establish that her employer discriminated against her based on her disability under either of two methods: 1) the employee "may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus", Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000); or, 2) the employee can use the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (U.S. 1973), "to prove by indirect evidence that her employer intentionally discriminated against her." Bekker, 229 F.3d at 670.

With regard to the first method, direct evidence is evidence that "in and of itself suggests that someone with managerial authority was animated by an illegal employment criterion." Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999) (citations omitted). "[I]n order for allegedly discriminatory remarks to 'qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question." Robin v. Espo Engineering Corp., 200 F.3d 1081, 1089 (7th Cir. 2000). If the employee then presents evidence "that the employer was motivated in part by discrimination, the [employer] may then avoid a finding of liability by proving that it would have made the same decision absent discrimination. Bellaver, 200 F.3d at 492. "To survive a motion for summary judgment, therefore, [Plaintiff]

must present sufficient evidence to allow a rational jury to reasonably conclude that, but for her disability ..., [defendant] would not have discharged her." Bekker, 229 F.3d at 670-671.

Under the *McDonnell Douglas* burden-shifting approach, "a plaintiff first must establish a prima facie case of discrimination by her employer, which creates a presumption of intentional conduct." Bekker, 229 F.3d at 672. Once a prima facie case is established, the burden then shifts to defendant "to articulate a nondiscriminatory motive for the termination." Dvorak, 289 F.3d at 485. "If the employer does so, the inference of discrimination disappears, and the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was a pretext for intentional discrimination." *Id.*; Bekker, 229 F.3d at 672. "The ultimate burden to prove intentional discrimination remains with the plaintiff. Dvorak, 289 F.3d at 485; St Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (U.S. 1993).

"To establish a prima facie case of ... disability discrimination, plaintiff is required to present evidence adequate to create an inference that the adverse employment decision was based on an illegal discriminatory criterion." Robin, 200 F.3d at 1090. Accordingly, plaintiff must set forth evidence to establish the following factors: "(1) [s]he was within the protected class (... disabled within the meaning of the ADA); (2) [s]he was performing [her] job to the employer's legitimate expectations; (3) [s]he was discharged; and (4) [the employer] hired someone else who was [less qualified] or other such evidence that indicates that it is more likely than not that ... [her] disability was the reason for the discharge." Robin, 200 F.3d at 1090.

Defendant asserts that plaintiff has no direct evidence of discrimination and, while disputing that plaintiff can establish a *prima facie* case under the *McDonnell Douglas* burden-shifting analysis, defendant further asserts that plaintiff has not met her burden of offering

evidence that defendant's proffered non-discriminatory reasons were merely a pretext for discrimination. "To demonstrate pretext, 'a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation.'" Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001) (*citations omitted*). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." Grube v. Lau Industries, Inc., 257 F.3d 723, 730 (7th Cir. 2001) (*citations omitted*), *see also*, Dvorak, 289 F.3d at 487 (*citations omitted*) ("a rebuttal must tend 'to show that the employer's reasons for some negative job action are false, thereby implying, if not actually showing, that the real reason is illegal discrimination .... [T]he question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest'"). To demonstrate pretext, plaintiff "must demonstrate that [the defendant employer's] articulated reason for her discharge either: (1) had no basis in fact; (2) did not actually motivate her discharge; or (3) was insufficient to motivate her discharge." Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1005 (7th Cir. 2002).

Plaintiff asserts, and the court agrees, that the following evidence is sufficient to establish a genuine issue of fact as to whether defendant's conduct constituted direct evidence of discrimination, and meets plaintiff's burden of establishing pretext for purposes of denying summary judgment: 1) discussion between defendant's president, Lightfield, and Solberg in a series of e-mails including Lightfield directing Solberg to "document [plaintiff's] deficiencies now and share them with her as you would any other adjunct faculty member," combined with Solberg's testimony that after further consideration, it was decided that plaintiff should not be

informed of defendant's alleged concerns; and, 2) plaintiff was given different "shifting" reasons for defendant's decision not to rehire her.

The following are excerpts from a series of e-mails between Solberg and Lightfield, beginning on November 19, 1998:[3]

Solberg wrote to Lightfield:

... On another more urgent matter, I need your advice about what to do about Iris Cleveland, a disabled English instructor who has caused multiple problems with inappropriate demands for accommodation. (Iris, who has had a stroke, was hired because she had first-rate credentials from the University of Chicago and had taught here in the past.) Her latest and most outrageous demand is that she asked one of her students to provide her with rides to and from her home to the College. She has also asked the student (Maria Hawkins, a mature, kind, 36 year old student) to be a "runner" for her, bringing food from the cafeteria and picking up her mail.
Maria came to Juanita Butler to complain yesterday and tried to drop the class (English 98) even though she was receiving a good grade. Juanita and I immediately set to work to document multiple problems, reverse the drop request, and move her to Tracey Steward's class. Fortunately, Juanita recently observed Iris' teaching and gave her an unsatisfactory evaluation. We have also had complaints from students that she is assigning inappropriate materials, not returning papers, and not, in fact, focusing her instruction on writing. We will not, of course, rehire her, but her earlier actions asking for inappropriate accommodation make her litigious temperament all too evident.
Linda and I discussed this situation yesterday. My initial thought was to replace her immediately, but we decided that it was so late in the semester that that would cause her students more disruption than keeping her in place and not rehiring her. Linda suggested that I write Iris a letter documenting our concerns (focusing not on accommodation but on teaching). If I did that, the letter would have to be reviewed by the College attorney because of ADA implications. An alternative would be to keep a confidential documentation file, say nothing, not rehire her, and cite teaching deficiencies if we were asked to justify our decision. This course might be safer for the College. What do you advise? We have fixed the problem for one student, but not for the rest of the class- -and it is very late in the day to do so.

Lightfield Replied to Solberg:

---

[3]Portions of the e-mails concern subjects unrelated to plaintiff and the court will not quote such language. The court further notes that the exhibit of the e-mails has the communications in the opposite order that they were sent and the court will realign them so that they appear in this opinion in the order they were sent.

I think you should document her teaching problems now. We've never established a right to PT/adjunct employment so let her try. However, having documentation about her inadequate teaching will be helpful. We already agreed in Cabinet how far to go- -not go- -with regard to accommodations. Her latest requests should be denied, or a petition presented to the Board of Trustees as per Board policy for accommodation and let them decide.

\*      \*      \*

Solberg Replied to Lightfield:

... I want to make sure I understand your reply about Iris. Are you saying that I shouldn't write a letter to her now summarizing her deficiencies, but instead should document any problems in case she complains later about not being rehired? On reflection, waiting seems wisest to me since I don't really don't think we can solve the problems she's caused this late in the semester.

Lightfield Replied to Solberg:

No, you should document her deficiencies now and share them with her as you would any other adjunct faculty member who is teaching for us and for whom we have teaching concerns. I just want to be sure that there is "documentation" as we should err on the side of expecting a legal challenge and all. There are no more accommodations to her until and until a recommendation is made to the Board for their approval as per our Board policy.

The court notes that had Lightfield and Solberg followed Lightfield's directions and documented and shared with plaintiff any deficiencies Solberg found in her performance this case would have a stronger record in defendant's favor. The subsequent decision not to follow this plan, and failure of Solberg to discuss plaintiff's performance deficiencies with her prior to the time of making a decision not to re-hire plaintiff--as testified to by Solberg in her deposition-- makes Solberg's statements in her e-mail subject to several interpretations, one of which could be discriminatory in nature. Because employment discrimination cases often turn on issues of intent and credibility, summary judgment standards are applied "with special scrutiny." Bellaver

22

v. Quanex Corp., 200 F.3d 485, 491 (7th Cir. 2000). The court finds that Solberg's intent, as evidenced in these statements and the decisions implemented thereafter, raise a genuine issue of fact that precludes granting defendant summary judgment. The potential that Solberg and Lightfield's statements could be interpreted as direct evidence of discrimination is one for a jury, not the court, to determine. *See*, Council 31, American Federation of State, County and Municipal Employees, AFL-CIO v. Doherty, 169 F.3d 1068, 1072 (7th Cir. 1999) ("[d]irect evidence- -evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents" can create a triable issue of intentional discrimination sufficient to survive summary judgment).

The court further finds merit with Plaintiff's assertion that the fact that defendant provided plaintiff with "shifting and inaccurate reasons for the decision not to continue her employment" raise an issue of fact regarding pretext under the *McDonnell Douglas* analysis. Plaintiff states that when she first asked Solberg why no one had offered to rehire plaintiff for the next semester, Solberg "referred" to the fact that plaintiff refused to sign her employment application.

Shortly after she had been hired and started teaching her classes, plaintiff was asked to fill out paperwork including an application. Plaintiff refused to sign the application based on language at the end of the document, above the signature line that allowed defendant to disclose personal information about plaintiff to third parties. Madderom, Director of Human Resources and Employee Relations, testified that plaintiff told him that she would not sign the document unless that language was deleted because "[plaintiff] didn't feel that was appropriate, that that was too personal and it was too private and it was a confidentiality that should not be invaded."

23

Plaintiff cites to a memorandum written by Solberg to plaintiff's employment file and testimony

in Solberg's deposition that the failure to sign her employment application did not play a part in

the decision not to rehire plaintiff. The memorandum states in pertinent part:

> "I spoke to Ms Cleveland late in the semester when she asked why no one had offered to
> rehire her for spring semester. Initially, when asked this question, I referred to her refusal
> to sign the employment contract every new hire is supposed to sign."

When questioned about these statements in this memorandum and the conversation with

plaintiff, Solberg testified at her deposition:

> Q: Do you remember why you told Iris that she would not be rehired because she did not
> sign the employment application?
> A: Because it's Board policy.
> Q: Okay. When you first made the decision that Iris would not be rehired, do you
> specifically recall relying on the fact that she had not signed her application.
> A: That was not central to the decision, no. I want to make that very, very clear.
> Q: Was it part of the decision?
> A: Not that point, because we had decided that the performance issues trumped
> everything else.

This inaccurate response, along with evidence that plaintiff was subsequently told she

was not being rehired because of her performance, and yet later informed she was not being

rehired because of the student evaluation results, constitutes sufficient evidence to deny summary

judgment and send the issue of whether defendant's stated reasons were pre-textual to a jury. *See*

*generally*, Lawson v. CSX Transportation, Inc., 245 F.3d 916, 931-932 and n. 13 (7th Cir. 2001)

(employer's "shifting" reasons for decision not to hire, "some of which were inaccurate,"

provided sufficient basis for denying summary judgment, permitting a jury to determine whether

employer's stated reasons were pretextual). Further, "[b]ecause a fact-finder may infer

intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness

into question precludes a summary judgment." <u>O'Neal v. City of New Albany</u>, 2002 WL 1305540 at *5 (7th Cir. June 14, 2002).

The court finds plaintiff has sufficiently established a genuine issue of fact as to whether "but for her disability" defendant would not have discharged her, and that defendant's legitimate, nondiscriminatory reasons for choosing not to rehire plaintiff were pretextual for unlawful discrimination.

## CONCLUSION

For the reasons set forth above, the court denies defendant's motion for summary judgment. This matter is set for a report on status July 25, 2002, at 9:00 a.m.

**ENTER:**    **July 12, 2002**

_____

**Robert W. Gettleman**
**United States District Judge**